# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 18, 2013

## ERIKA CIENFUEGOS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-C-3013      Mark J. Fishburn, Judge**

---

**No. M2012-01924-CCA-R3-PC - Filed September 27, 2013**

---

The Petitioner, Erika Cienfuegos, appeals from the post-conviction court's denial of her petition for post-conviction relief, contending that she received the ineffective assistance of counsel which, given that she was unmedicated for her mental illnesses during the plea submission hearing, led to her unknowingly entering a guilty plea. Upon consideration of the applicable authorities and the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Erika Cienfuegos.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Victor S. (Torry) Johnson, III, District Attorney General; and Sharon Reddick, Assistant District Attorney General; for the appellee, State of Tennessee.

## OPINION

### FACTUAL BACKGROUND

The Petitioner was indicted on September 19, 2008, for the following Class A felony offenses against A.C., a child under eight years of age: Count 1, aggravated child abuse, occurring on February 11, 2008; Count 2, aggravated child abuse, occurring on May 30, 2008; Count 3, aggravated child abuse, occurring on May 30, 2008; Count 4, aggravated child neglect, occurring on May 30, 2008; Count 5, aggravated child abuse, occurring on May 30, 2008; and Count 6, aggravated child neglect, occurring on May 30, 2008. Counsel

was appointed, and a plea agreement was negotiated. The plea agreement provided that the Petitioner would plead guilty to the lesser offenses of child abuse in Count 1, a Class D felony, and aggravated child abuse in Count 3, a Class B felony[1]; the remaining counts would be dismissed.

## *A. Guilty Plea Hearing*

The guilty plea hearing was held on September 17, 2010. The proffered factual basis for the plea was as follows:

[H]ad this matter of State of Tennessee versus Erika Powers, also known as Erika Cienfuegos, the State's proof would be that in the Winter and Spring of 2008, Ms. Powers [was] married to the biological father of the child who is the victim in both of these counts. She is a child who[se] date of birth is 5/30, 2005. They all - Ms. Powers, the child, the child's father and two other children all live together in the same household here in Davidson County.

The Stat[e]'s proof as to count one of the indictment would be that on February the 11th, 2008, Ms. Powers hit the child, knocking her out of the chair that she was sitting in and causing bruising to her head and face. The child presented at the hospital with these injuries. Ms. Powers was interviewed by detectives[,] and she did eventually admit to causing those injuries[. T]herefore[,] she admitted to knowingly, other than by accidental means, treating a child in such a way that caused injury. That event occurred at the family's residence here in Davidson County, and that would be the State's proof as to count one of the indictment.

As to count three of the indictment, the State's proof would be that again Ms. Powers was in the family's residence here [in] Davidson County with the three children[,] and sometime during that day[,] Ms. Powers became angry with the child for getting dirty. [A]t some point in the midst of her anger and in the midst of trying to clean the child up, Ms. Powers scalded the child's hand with scalding water causing a very, very serious third-degree burn to the child's hand, which has subsequently required numerous surgeries and surgical procedures[. S]he will wear the physical scar of that injury for the rest of her life[.] . . . Ms. Powers was interviewed by detectives again after presenting to

---

[1] The Petitioner's conviction of aggravated child abuse is a lesser offense of the indicted charge, hence a Class B felony, because it does not include the aggravating circumstance of the child involved being eight years of age or less, which elevates the offense to a Class A felony.

the hospital and again she admitted to causing the injury to the child and thereby knowingly, other than by accidental means, treating a child in such a way as to result in this injury.

In response to questioning by the trial court, the Petitioner stated that she had been diagnosed with bipolar disorder and post-traumatic stress disorder, that she was currently taking Invega and Paxil for these illnesses, that the medications were working by keeping her mood stable, and that she was "clear-headed." The Petitioner agreed that she had spoken with trial counsel to her satisfaction about the circumstances and facts surrounding the offenses and the plea agreement and that trial counsel had answered all of her questions about the plea agreement before she signed it and agreed to plead guilty. She stated that she understood the consequences of her guilty plea and the rights that she was giving up by entering a plea of guilty. The Petitioner also stated that she understood the possible punishment if convicted of the indicted offenses at trial and the actual punishment she would receive upon entering her plea and that she did not have any additional questions. The Petitioner further stated that no one threatened her or promised her anything and that she was solely pleading guilty because she was, in fact, guilty.

After explaining the rights that the Petitioner was entitled to, and giving up as a result of her plea, the trial court asked trial counsel whether she believed the Petitioner understood the charges and was pleading guilty freely and voluntarily; trial counsel responded in the affirmative. The trial court then stated, "Based upon your pleas of guilty, I find you guilty. I find there's a factual basis to support the pleas of guilt, that you're competent to enter said pleas and that you're doing so freely, knowingly and voluntarily." The trial court accepted the plea agreement and sentenced the Petitioner to serve four years in Count 1 at thirty percent and eleven years at one hundred percent in Count 3, to be served consecutively, for an effective fifteen-year sentence.

### B. Post-Conviction Hearing

The Petitioner and trial counsel testified at the post-conviction hearing. The Petitioner testified that she accepted the plea agreement because she was scared. When asked to expound on why she was scared, the Petitioner explained, "[t]he fact that I was given 15 years at a hundred when I know I did something really bad, there's still some other circumstances that it wasn't taken with [trial counsel] was presenting me." She further explained that trial counsel told her that she could get thirty years at one hundred percent if she did not accept the plea agreement, so she decided to accept the deal. The Petitioner testified that she had been diagnosed with bipolar disorder, depression, post-traumatic stress disorder, and "something about mania" some time prior to the commission of her offenses.

The Petitioner stated that trial counsel did not represent her properly because trial counsel knew that she had mental illnesses, that she had been suffering tremendously from those illnesses, and that she was not on medication at the time she entered her guilty plea; despite this knowledge, trial counsel failed to get a specialist to testify regarding her illnesses. She insisted that she would not have pleaded guilty if she had been on her medication during the guilty plea hearing. The Petitioner stated that she never talked about trial nor told trial counsel that she wanted to go to trial because she "wasn't sure" and reiterated that she was scared that she would be sentenced to serve thirty years.

On cross-examination, the Petitioner admitted that, at the guilty plea hearing, she told the trial court that she was currently taking Invega and Paxil, that those medications were working properly, and that she was "clear-minded." While the Petitioner conceded that she was presumably telling the truth at the guilty plea hearing, she explained that she did not understand the judge because he was talking fast and her "English is not that good." The Petitioner admitted that she spoke with trial counsel often during trial counsel's two-year representation, mostly over the phone, and that trial counsel explained the charges and the likelihood of her receiving consecutive sentencing on more than one occasion. The Petitioner further admitted that she had no reason to believe that trial counsel was being untruthful when trial counsel advised her that she could get thirty years at one hundred percent if she went to trial. The Petitioner also admitted that she was scared that she would get more time if she did not accept the plea agreement.

Trial counsel testified that she represented the Petitioner "the entire time," approximately two years. She explained that the case was set for trial several times but that she delayed resolution for as long as she could so that the Petitioner could spend as much time as possible with the Petitioner's family. Trial counsel also explained that she conversed with the prosecutor "many, many times" in an attempt to negotiate a favorable plea agreement and that she ultimately received a better offer "a couple of days before the actual plea." She testified that she spoke with the Petitioner over fifty times, both via telephone and in person, during her representation. Trial counsel further testified that the Petitioner was on bond for Count 1 when the Petitioner committed the offenses in Counts 2 through 6. Trial counsel also testified that she explained to the Petitioner the ramifications being on bond would have on the ultimate outcome – the likelihood and impact of the imposition of consecutive sentencing – and that she went over the discovery with the Petitioner. She stated that she believed the State's case against the Petitioner was "very strong," explaining that the Petitioner had done "a video reenactment of how the incident occurred" and that there were "pictures from Vanderbilt" of the child's injuries. Trial counsel testified that the Petitioner correctly relayed her statement that the Petitioner faced thirty years if convicted but that trial counsel actually told the Petitioner that it would be a minimum of thirty years, not a maximum.

Trial counsel explained that the mental evaluation was conducted "because [the Petitioner] said that she was off of her medication at the time and that the fact that [the Petitioner] was off of her medication, it was affecting her actions." Trial counsel stated that she requested the evaluation to see if they had any defense based on the fact that the Petitioner was not on medication at the time of the incident; the results of that evaluation were harmful. Trial counsel clarified that she had the Petitioner evaluated solely for the purpose of determining whether the Petitioner's mental illnesses themselves and the fact that the Petitioner was not on medication when the incident occurred might negate the necessary mental state. Trial counsel testified that, during the representation, the Petitioner told trial counsel that "there were times when she was on and off her medication[,] and [trial counsel] encouraged her to keep up with counseling and keep up with her medication." Trial counsel admitted being aware that the Petitioner was struggling with her mental health issues. Trial counsel testified, "[the Petitioner] told me that she was off of her medication when the incident occurred, which is why I had her evaluated, but during those two years, she would fall in and out of depression, finding jobs, not finding jobs, now she was having tremendous financial issues." Nevertheless, trial counsel further testified that at no point did trial counsel feel that the Petitioner was not understanding the basic nature of the charges against her or that she was unable to assist trial counsel in her defense. Trial counsel also testified that she never noticed any language barriers, despite English not being the Petitioner's first language, and noted that the Petitioner went to school in California.

Regarding the plea agreement, trial counsel testified,

[The Petitioner] wasn't happy about the plea, but we went over, I mean, maybe twenty times, the evidence, the strength of the case, the fact that we did not have any mental health defense what she was likely to get at trial, the strength and weaknesses, we went over the plea petition that day with her father and her brother and that was, I mean, maybe a 45-minute conversation, we went over every single line[. S]he had questions, and her family had questions, and I believe that everything was answered on that day.

On cross-examination, trial counsel admitted that the Petitioner's family jointly agreed that taking the "deal" was the Petitioner's best option. However, trial counsel denied that the Petitioner's family encouraged her to plead guilty, explaining that they were there for support. Trial counsel also admitted, "I don't think she ever really got her mind wrapped around how much time the charge carries, . . . which is why I went over the statute and the time many times with [the Petitioner]." Nevertheless, trial counsel denied that the Petitioner appeared, or was in fact, confused about what she was charged with.

In a memorandum opinion denying relief, the post-conviction court made the

following relevant findings:

> In this case, the Court finds that there was nothing deficient in the representation provided by [trial counsel]. Petitioner had admitted to causing the injuries suffered by the victim on both occasions. Therefore, her only defense was to suppress her confessions or to negate her culpable mental state. [Trial counsel] concluded that there was no legal basis upon which to suppress the admissions made by Petitioner[,] and [P]etitioner has presented no evidence to the contrary.

> On the issue of Petitioner's mental state, [trial counsel] had Petitioner evaluated to assess the possible lack of a culpable mens rea as a defense to these crimes. The testimony was that such a defense was not only unsupportable, but that the expert testimony would be damaging to the Petitioner. Left with no other viable options to effectively present a reliable defense, [trial counsel] was left with no alternative to concentrating her efforts on reaching a plea agreement that would minimize the consequences to her client. She did this, but only after fully discussing all the consequences with Petitioner.

> . . . .

> A part of the exchange during the plea between the Court and Petitioner clearly refutes Petitioner's claim regarding any mental impairment: [her agreement that she could read and write; that she was taking Invega and Paxil; that those medications were working, adequately controlling her symptoms; that her mood was stable; that she was clear-headed; and that she understood why she understood why she was in court and what she was doing].

> . . . .

> . . . Petitioner was aware of her rights, and she admitted to the court that she was entering her plea of guilt without threats or promises. [] The Court took time to explain to Petitioner the charges pending against her, and the plea she had accepted. During times in the colloquy, Petitioner asked questions which were promptly answered. Petitioner had sufficient understanding of the English language as to not need an interpreter, and asserted that she could read and write and had graduated from high school in California. Therefore, the Court feels that Petitioner's argument is without merit, and she entered her plea of guilty freely, knowingly and voluntarily.

ANALYSIS

The Petitioner challenges her guilty plea, explaining that she was not on her medication that day, that her mental illnesses and lack of medication left her mind clouded, and that she would not have accepted the plea if she had been properly medicated. The Petitioner contends that trial counsel knew that the Petitioner was "struggling tremendously with her mental illnesses" and that she was "off her medications at the time of the plea," concluding that trial counsel's failure to reschedule the plea hearing until the Petitioner was properly medicated resulted in the ineffective assistance of counsel. The State responds that there was no evidence that trial counsel was ineffective nor that the Petitioner did not understand the guilty plea proceedings.

Petitions for post-conviction relief are governed by the Post-Conviction Procedure Act. Tenn. Code Ann. §§ 40-30-101 to -122. To obtain relief, the petitioner must show that her conviction or sentence is void or voidable because of the abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The petitioner must prove her factual allegations supporting the grounds for relief contained in her petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(2)(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is clear and convincing when there is no substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

The post-conviction court's findings of fact are conclusive on appeal unless the evidence in the record preponderates against them. See Nichols v. State, 90 S.W.3d 576, 586 (Tenn. 2002) (citing State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999)); see also Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). The petitioner has the burden of establishing that the evidence preponderates against the post-conviction court's findings. Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). This court may not re-weigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Nichols, 90 S.W.3d at 586. Furthermore, the credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the post-conviction court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997).

*I. Ineffective Assistance of Counsel*

Ineffective assistance of counsel claims are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001). Thus, the trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed under a de novo standard, accompanied with a presumption that the findings are correct unless the

preponderance of the evidence is otherwise. <u>Fields</u>, 40 S.W.3d at 458 (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed under a de novo standard with no presumption of correctness. <u>Id.</u>

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the defendant to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>see</u> <u>Lockart v. Fretwell</u>, 506 U.S. 364, 368-72 (1993). A defendant will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the <u>Strickland</u> test. <u>See</u> <u>Henley</u>, 960 S.W.2d at 580. The performance prong requires a defendant raising a claim of ineffectiveness to show that counsel's representation was deficient, thus fell below an objective standard of reasonableness or was "outside the wide range of professionally competent assistance." <u>Strickland</u>, 466 U.S. at 690. The prejudice prong requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. "A reasonable probability means a probability sufficient to undermine confidence in the outcome." <u>Id.</u> Failure to satisfy either prong results in the denial of relief. <u>Id.</u> at 697. The <u>Strickland</u> standard has also been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. <u>State v. Melson</u>, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the range of competence demanded of attorneys in criminal cases. <u>Strickland</u>, 466 U.S. at 687 (1984); <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 466 U.S. at 689. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. <u>Hellard v. State</u>, 629 S.W.2d 4, 9 (Tenn. 1982). "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." <u>Cooper v. State</u>, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea. <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985). The prejudice component is modified such that the defendant "must show that there is a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59; <u>see also</u> <u>Hicks</u>, 983 S.W.2d at 246.

## II. Mental Issues Affecting Voluntariness of Plea

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. Thaddius Brown v. State, No. W2010-01131-CCA-R3-PC, 2011 WL 4027338, at *7 (Tenn. Crim. App. Sept. 9, 2011). In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. Hill v. Lockhart, 474 U.S. at 56 (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S .W.2d 337 (Tenn. 1977). See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). In order to find that the plea was entered "intelligently" or "knowingly," Boykin requires that the trial court "canvass[ ] the matter with the accused to make sure [s]he has a full understanding of what the plea connotes and of its consequences." Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 244)(emphasis in original).

The courts have recognized that "the decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against h[er] and the likelihood of securing leniency through a plea bargain." See id. at 904. (quoting Brown v. Perini, 718 F.2d 784, 786 (6th Cir. 1983)). There are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Blankenship, 858 S.W.2d at 904. These factors include (1) the defendant's relative intelligence; (2) her familiarity with criminal proceedings; (3) whether she was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against her and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

Considering those factors, we conclude that the Petitioner understood the guilty plea proceedings and that her guilty plea was voluntarily entered. During the hearing, the Petitioner told the trial court that she was currently taking her prescribed medications, that she was "clear-headed[,]" that she understood the possible punishment if convicted of the indicted offenses and the actual punishment she would receive upon entering her plea, and

that trial counsel had satisfactorily answered all of her questions; the Petitioner also said that she was pleading guilty solely because she was, in fact, guilty. At the post-conviction hearing, the Petitioner admitted that she believed trial counsel's statement that she could face up to thirty years, with no release eligibility, if convicted of all or some combination of the offenses for which she was indicted. Given that the Petitioner faced anywhere from fifteen to twenty-five years on each of the six counts for which she was indicted and that she met the criteria for imposing consecutive sentencing, trial counsel's advice was not erroneous. As such, we conclude that the Petitioner's testimony at both hearings suggests that she was aware of the potential punishment she faced and that she decided to plead guilty to avoid a greater punishment in a jury trial.

We now turn to the Petitioner's claim that trial counsel was ineffective for failing to take her mental illnesses into account during the plea hearing and that she would not have pleaded guilty if she had been properly medicated. The applicable test as to competency to stand trial is whether the accused has the sufficient present ability to consult with her lawyer with a reasonable degree of rational understanding and whether she has a rational and factual understanding of the proceedings against her. State of Tennessee v. Billy Joe Carter, No. E2012-00279-CCA-R3-PC, 2013 WL 625597, at *15 (Tenn. Crim. App. Feb. 20, 2013)(citing State v. Benton, 759 S.W.2d 427 (Tenn. Crim. App. 1988)). The record reflects that the Petitioner was able to consult with trial counsel and that trial counsel thoroughly explained the plea agreement with the Petitioner, her father, and her brother prior to the guilty plea hearing. We note that although trial counsel admitted knowing that the Petitioner had been struggling with her mental illnesses during the representation, there is no evidence that trial counsel was aware that the Petitioner was in fact unmedicated at the time of the plea. The veracity of that statement notwithstanding, the Petitioner has presented no evidence to show that her untreated mental illnesses precluded her from having a rational and factual understanding of the proceedings against her and from being able to consult with trial counsel with a reasonable degree of rational understanding. Therefore, she did not present sufficient evidence to satisfy the prejudice component, demonstrating that she would not have pleaded guilty and would have insisted on going to trial but for trial counsel's alleged error. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The Petitioner is not entitled to relief on this issue.

CONCLUSION

Based upon the foregoing, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE